IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KADY NAVARRO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:19-cv-01103 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| ROBERT J. YOUNG COMPANY, LLC, | ) | MAGISTRATE JUDGE FRENSLEY |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 30). Plaintiffs filed a Response (Doc. No. 40), and Defendants filed a Reply (Doc. No. 43). For the reasons stated herein, the Motion is **GRANTED in part** and **DENIED in part**.

### I.  FACTUAL BACKGROUND

This case arises from Plaintiff Kady Navarro's ("Plaintiff" or "Navarro") demotion and subsequent termination after she returned from maternity leave. Prior to her termination, Plaintiff had been employed by Defendant Robert J. Young Company, LLC ("Defendant" or "RJ Young") in various roles since April 2013. (Doc. No. 42 ¶¶ 9-13). RJ Young is a dealer of office technology headquartered in Nashville. (*Id*. ¶¶ 1-2). At the time of these events, Plaintiff was employed as the sales manager in charge of Defendant's Ricoh team. (Doc. No. 44 ¶ 7).

From September 26, 2018, to December 26, 2018, Plaintiff took twelve weeks of FMLA leave for the birth of her second child. (Doc. No. 42 ¶ 19). Plaintiff returned to her previous position as Sales Manager at the end of her FMLA leave. (*Id*. ¶ 25). Upon her return, Plaintiff scheduled a meeting with her supervisor, Chad Lagrone, ("Lagrone") to "catch up" on changes and developments that had occurred while she was on leave. (*Id*. ¶ 26).

At the meeting, Plaintiff told Lagrone that she had postpartum depression (Navarro Dep., Doc. No. 35-1, 87-88). She also shared her prior experience with postpartum depression, her efforts to more proactively manage her symptoms this time, and her concerns about her work in connection with her responsibilities at home and her health. (*Id*.). Notwithstanding her concerns, Plaintiff told Lagrone that she wanted to remain in her current position but wanted to make him aware of her thoughts and experiences in the event that it became necessary for her to change roles. (*Id*.).

While on leave, Plaintiff had discussed with one of her sales representatives, Melissa Raines, the possibility of switching positions upon Plaintiff's return to work if she found the sales manager position to be too much for her to handle. (Doc. No. 44 ¶ 18). Plaintiff shared this conversation with Lagrone but emphasized that she wanted to see how she performed in the sales manager position before deciding whether she should step down. (*Id*. ¶ 27). At the end of the meeting Plaintiff and Lagrone expressed agreement that no immediate changes would take place. (*Id*. ¶ 32). Lagrone stated that they would "see where things go down the road," and Plaintiff stated that if she got back into the role and felt that it was too much for her, she would inform Lagrone and "step down and move back into a sales role." (Lagrone Dep., Doc. No. 41:21-23; Navarro Dep., Doc. No. 35-1, 89:14-16).

Soon thereafter, however, Lagrone contacted his supervisors, Mike Noffsinger and Chris Clark, and relayed his conversation with Plaintiff to them. (Doc. No. 44 ¶ 33). Lagrone, Noffsinger, and Clark decided to demote Plaintiff to a sales representative and promote Melissa Raines to the sales manager position held by Plaintiff. (*Id*. ¶ 33-34).

On January 15, 2019, Lagrone told Plaintiff that she was being demoted to a sales representative position. (*Id*. ¶¶ 37, 40). Plaintiff protested and told Lagrone that she wanted to

2

remain in the sales manager role. (*Id*. ¶ 41). Lagrone responded that the decision had been made. (*Id*.). Though Lagrone acknowledged that Plaintiff had not had any performance issues that would lead him to believe she could not do her job, he stated that he, Noffsinger, and Clark had concerns about Plaintiff being able to do her job after the December 27th meeting. (*Id*. ¶¶ 42-43). At Plaintiff's insistence, Lagrone spoke with his superiors again. (*Id*. ¶ 45). The following day, January 16, 2019, Lagrone again met with Plaintiff and informed her that the decision to demote her would stand. (*Id*. ¶ 47). Plaintiff informed Lagrone that she felt that this decision was discriminatory. (*Id*. ¶ 49). As a result of her discrimination concerns, Plaintiff recorded the January 16th meeting without Lagrone's knowledge. (*Id*. ¶ 52; Doc. No. 42 ¶ 61).

Lagrone learned that Plaintiff had recorded the January 16th meeting. (Doc. No. 42 ¶ 67). He consulted with superiors and determined that Plaintiff should be terminated for violating RJ Young's recording devices policy. (*Id*. ¶ 68-69). On January 17, 2019, Lagrone met with Plaintiff for a final time and asked her whether she had recorded the meeting the previous day. (*Id*. ¶ 71). Plaintiff admitted she had. (*Id*.). Defendant then terminated Plaintiff for violating company policy. (*Id*. ¶ 72).

Defendant's Policies and Procedures manual "request[s] that [employees] refrain from using any type of recording device without prior consent" and prohibits the "improper use" of recording devices. (Doc. No. 35-1, PageID# 576). Plaintiff signed the form acknowledging receipt of the manual. (*Id*. PageID# 484).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the

3

Case 3:19-cv-01103   Document 49   Filed 04/18/22   Page 3 of 14 PageID #: 776

Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

### III. ANALYSIS

Plaintiff brings the following claims against RJ Young as a result of her demotion and subsequent termination: interference and retaliation under the Family Medical Leave Act ("FMLA") (Count I); gender discrimination, pregnancy discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") (Count II) and under the Tennessee Human Rights Act ("THRA") (Count III); disability discrimination under the Tennessee Disability Act ("TDA") (Count VI) and under the Americans with Disabilities Act ("ADA") (Count V); and for the torts

4

of intentional infliction of emotional distress (Count VI) and negligent infliction of emotional distress (Count VII). Defendants move for summary judgment on all claims.

**A.    FMLA**

Plaintiff claims that RJ Young's actions give rise to two claims under the FMLA: an interference claim and a retaliation claim. Defendant contends that there is no evidence that it interfered in any way with Plaintiff's FMLA leave, stating that Plaintiff received and used her twelve weeks of leave and returned to the same position she held before taking leave. Plaintiff responds that she has properly raised interference because Defendant began the process of demoting her the day after she returned from leave.

It is undisputed that Plaintiff took her complete twelve weeks of FMLA leave in 2018. (Doc. No. 42 ¶ 19). It is also undisputed that Plaintiff returned to her previously held position and continued to receive the commiserate compensation and benefits until her termination. (*Id*. ¶ 25). Under these circumstances, Plaintiff's claims sound in retaliation, not interference.[1] *See Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012) (finding that "the essence of Seeger's claim is retaliation, not interference" when he received all of the FMLA leave to which he was entitled and returned to the same position he previously held); *Wallner v. Hilliard*, 590 F. App'x 546, 551 (6th Cir. 2014) (noting the appropriateness of viewing the plaintiff's claim as only one of retaliation where "all of the supporting allegations proceeded upon a retaliation theory without mentioning the deprivation of an FMLA benefit to which she was entitled.").

---

[1] "To establish a prima facie case of FMLA interference, [a plaintiff] must show that: (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir.2006)).

5

Where, as here, Plaintiff submits circumstantial evidence of retaliation, the Court considers her claim under the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012) (noting the appropriateness of the *McDonnell Douglas* burden shifting framework in FMLA cases). First, Plaintiff must establish a *prima facie* case of FMLA retaliation. The burden then shifts to the defendant to provide a non-discriminatory reason for the adverse employment action. *Smith v. City of Toledo, Ohio*, 13 F.4th 508, 515 (6th Cir. 2021). Once provided, it then becomes the plaintiff's burden to provide evidence from which a finder of fact could conclude that the proffered reason was pretext for discrimination. (*Id.*).

> To establish a prima facie case of retaliation, Plaintiff must show that:
>
> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of her rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald,* 667 F.3d at 761 (quoting *Killian v. Yorozu Auto. Tenn.*, Inc., 454 F.3d 549, 556 (6th Cir.2006)).

Defendant argues that Plaintiff cannot establish a prima facie case because she cannot establish a causal connection between her protected activity—taking FMLA leave—and the adverse action—either the demotion or the termination. In so arguing, Defendant contends that Plaintiff has not submitted any proof that her FMLA leave contributed to Defendant's decision to demote or terminate her and that she cannot rely on temporal proximity because four months passed between her request for FMLA leave and her demotion and termination. Plaintiff argues that the temporal proximity is sufficient to establish a causal connection, pointing to the less than one-month period between Plaintiff's return to work and her demotion and termination.

6

"In order to establish a causal connection, a plaintiff must show some type of retaliatory intent." *Tennial v. United Parcel Service, Inc.*, 840 F.3d 292, 308 (6th Cir. 2016). Plaintiff has not done so here. Regardless of whether the Court considers the temporal proximity from the date of Plaintiff's leave request or the date of her return, there is simply no evidence before the Court from which to infer a retaliatory animus related to Plaintiff taking FMLA leave. Absent any such evidence, Plaintiff cannot establish a *prima facie* case for FMLA retaliation. Accordingly, Defendant's motion for summary judgment on this claim will be granted.

**B.     Title VII and THRA**

Plaintiff brings claims against Defendant under Title VII and the THRA for gender and pregnancy discrimination and retaliation.[2] Title VII makes it unlawful for an employer to discriminate against any individual "with respect to [her] compensation, term, conditions, or privileges of employment" on the basis of her gender. 42 U.S.C. §2000e-2(a)(1). This includes discrimination on the basis of "pregnancy, childbirth, or related medical conditions." 42 U.S.C. §2000e(k). Because Plaintiff presents circumstantial evidence, the Court again considers the claims under the *McDonnell Douglas* burden shifting framework.

1. <u>Gender Discrimination</u>

To establish a prima facie case of gender discrimination under Title VII, Plaintiff must show that she was: "(1) a member of a protected class, (2) subject to adverse employment action, (3) qualified for the position, and (4) replaced by a person outside the protected class or treated differently than similarly situated nonminority employees. *Tennial*, 840 F.3d at 303.

---

[2] "The analysis of claims brought pursuant to the THRA is identical to the analysis used for Title VII claims." *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008) (citing *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996)).

7

Defendant moves for summary judgment on this claim on the grounds that Plaintiff cannot meet the fourth prong. Defendant contends that Plaintiff can show neither that she was replaced by a person outside the protected class, nor that she was treated differently than similarly situated male employees. Plaintiff was replaced by another woman, Melissa Raines. (Doc. No. 44 ¶ 35). Accordingly, to establish a *prima facie* case, she must offer evidence that a similarly situated non-protected employee engaged in similar conduct and did not suffer an adverse employment action.

Plaintiff does not respond to Defendant's motion for summary judgment on this claim. The Court finds that Plaintiff's failure to respond is concession of the point and waiver of the argument. *See Palma v. Johns*, 27 F.4th 419, 461 n.1 (6th Cir. 2022) ("Generally, at the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the moving party's arguments."); *Humphrey v. U.S. Attorney General's Office*, 279 F.App'x 328, 331 (6th Cir. 2008) (noting that a plaintiff waives his arguments by failing to oppose defendant's motion); *see also ARJN#3 v. Cooper*, 517 F.Supp.3d 732, 750 (M.D. Tenn. Feb. 5, 2021) (collecting cases).

2. <u>Pregnancy Discrimination</u>

In order to establish a *prima facie* case of pregnancy discrimination, a plaintiff must show that: (1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision. *Prebilich–Holland v. Gaylord Entertainment Co.*, 297 F.3d 438, 442 (6th Cir. 2002). Defendant argues that Plaintiff cannot satisfy the second and fourth prongs.

First, Defendant states that Plaintiff "was rendered unqualified when she expressed doubt about commitment to the Sales Manager role, and when she unequivocally violated company policy." (Doc. No. 31 at 17). Defendant's single-sentence assertion misses the mark. "At the *prima facie* stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he

or she is qualified for the relevant job." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003) (emphasis in original). Objective criteria that courts may consider in determining whether a plaintiff can satisfy the qualification prong of their prima facie case include the employee's "education, experience in the relevant industry, and demonstrated possession of the required general skills." *George v. Youngstown State Univ.*, 966 F.3d 446, 464-65 (6th Cir. 2018) (quoting *Wexler*, 317 F.3d at 576).

RJ Young does not claim that Plaintiff lacked such qualifications, and the record before the Court reflects that Plaintiff served in the sales manager role for two years before her termination. (Doc. No. 44 ¶ 13). Accordingly, the Court finds that she has satisfied her *prima facie* burden of proof as to the second prong of her discrimination claim.

Second, Defendant argues that Plaintiff cannot show a nexus between her pregnancy and the adverse employment decisions. Defendant contends that because Plaintiff and Lagrone did not discuss her pregnancy "in and of itself" that her pregnancy played no role in Defendant's subsequent employment decisions. Defendant's argument overlooks that the pregnancy discrimination need not be based on pregnancy itself but may also be based on related medical conditions. 42 U.S.C. §2000e(k). There are disputed facts as to the content of the conversation. Plaintiff states that she informed Lagrone of her postpartum depression; Lagrone states that no such conversation occurred. (Navarro Dep., Doc. No. 35-1, 87-88; Lagrone Dep., Doc. No. 35-3, 40-42). Regardless of the content of the conversation, both parties contend that the conversation was the basis of Defendant's decision to demote Plaintiff. Drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has presented evidence of a nexus between her disclosure of a medical condition related to her pregnancy and the adverse employment actions.

Because Plaintiff has made a *prima facie* showing of pregnancy discrimination, the burden shifts to Defendant to offer a legitimate, non-discriminatory reason for the adverse employment actions. First, Defendant contends that Plaintiff was demoted due to her statements that she was not sure she wanted to continue in the management role. The Court has already noted that there are disputes of fact here as to the content of the conversation between Plaintiff and Lagrone. Second, Defendant states that Plaintiff was terminated for violating the company's recording policy, as stated in the employee Policies and Procedures manual.

Plaintiff responds that Defendant's proffered reason is pretext because no other employees have been disciplined or terminated under this policy. Additionally, there is a question of fact as to whether the policy in question actually prohibited Plaintiff's conduct. The policy only "request[s]" that employees not record conversations without consent. It only prohibits "improper use" but does not define "improper use." (Doc. No. 35-1, PageID# 576). The Court finds that Plaintiff has submitted evidence to raise the question of pretext to a jury. Accordingly, summary judgment will not be granted on Plaintiff's pregnancy discrimination claim.

3. Retaliation

Plaintiff claims that she was terminated for raising concerns that her demotion was discriminatory. "Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII." *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014). To establish a *prima facie* case of retaliation under the Title VII, "[a] plaintiff must demonstrate that: '(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.'" *Id.* (quoting *Jones v. Johanns*, 264 F. App'x 463, 466

10

(6th Cir. 2007). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Funk v. City of Lansing, Michigan*, 821 F. App'x 574, 582 (6th Cir. 2020) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

Defendant argues that Plaintiff cannot prove retaliation because she cannot establish causation. "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Texas Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 360 (2013). Defendant argues that Plaintiff's violation of company policy constitutes an intervening event that voids Plaintiff's contention that her termination was motivated by retaliatory animus. As the Court has already noted, there is evidence in the record from which the question of pretext may be raised to a jury. Accordingly, Defendant's motion will not be granted on this claim.

**C.     ADA and TDA**

Plaintiff brings claims for disability discrimination due to her postpartum depression under both the ADA and the TDA.[3] "To establish a prima facie case of disability discrimination, a plaintiff must show that 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016) (citing *Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011)).

Defendant moves for summary judgment on the grounds that Plaintiff can prove neither that she was disabled nor that she was perceived as being disabled. Defendant argues that Plaintiff has presented no evidence that she suffered from postpartum depression at the time of the adverse

---

[3]     A claim brought under the TDA is analyzed under the same standard as a claim under the ADA. *Cardenas-Meade v. Pfizer, Inc.*, 510 F.App'x 367, 369 n.2 (6th Cir. 2013).

11

employment action. As Defendant correctly notes, however, the disability may be either actual or perceived. The Sixth Circuit has opined that:

> [A]n individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment *whether or not* the impairment limits or is perceived to limit a major life activity.

*Equal Emp. Opportunity Comm'n v. W. Meade Place, LLP*, 841 F. App'x 962, 966 (6th Cir. 2021) (quoting 42 U.S.C. § 12102(3)(A)) (emphasis added).

As the Court has already noted, there are questions of fact as to whether Plaintiff discussed her postpartum depression with Defendant. Plaintiff states that told Lagrone that she had postpartum depression, that she was trying to manage her symptoms, and that, if the job proved to be too much in light of her health and home responsibilities, she would step down from her manager role. (Navarro Dep., Doc. No. 35-1, 87-88). Lagrone disputes Plaintiff's characterization of the meeting but agrees that the decision to demote Plaintiff was made after and as a result of this meeting. (Lagrone Dep., Doc. No. 35-3, 49-50). Defendant's argument that it did not perceive Plaintiff as being disabled because there is no proof that she was substantially limited in a major life activity is immaterial under the standard.

The record before the Court reflects competing evidence from which a reasonable jury could determine that Defendant regarded Plaintiff has having a disability. Defendant is not entitled to summary judgment on this claim.

**D.**     **Intentional Infliction of Emotional Distress**

Plaintiff's final claims are for intentional and negligent infliction of emotional distress. Defendant moves for summary judgment on both claims.

12

Case 3:19-cv-01103   Document 49   Filed 04/18/22   Page 12 of 14 PageID #: 785

### 1. Intentional Infliction of Emotional Distress

Under Tennessee law, "[t]he elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). Defendant argues that Plaintiff has submitted no evidence to meet the second and third prongs of the analysis. In response, Plaintiff points to her testimony that she was shocked and humiliated by Defendant's demotion and termination decisions.

"The standard for outrageous conduct is high, indeed." *Levy v. Franks*, 159 S.W.3d 66, 85 (Tenn. Ct. App. 2004). "Although no perfect legal standard exists for determining whether particular conduct is so intolerable as to be tortious, [the Tennessee Supreme Court] has adopted and applied the high threshold standard described in the Restatement (Second) of Torts[.]" *Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997). The Restatement standard is as follows:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

RESTATEMENT (SECOND) OF TORTS, Section 46, Comment D.

Under this standard the Court is tasked with determining "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Bain*, 936

S.W.2d at 623 (internal citations omitted). The facts of this case do not allow such a determination. Because Plaintiff has not carried her burden, summary judgment will be granted on this claim.

2. Negligent Infliction of Emotional Distress

In order to establish a claim of negligent infliction of emotional distress,

> [A] plaintiff in Tennessee must (1) satisfy the five elements of ordinary negligence: duty, breach of duty, injury or loss, causation in fact, and proximate or legal cause; (2) establish a "serious" or "severe" emotional injury; and (3) support his or her serious or severe injury with expert medical or scientific proof.

*Marla H. v. Knox Cty.*, 361 S.W.3d 518, 529 (Tenn. Ct. App. 2011).

Defendant argues that Plaintiff's negligent infliction of emotional distress claim is barred by the exclusive remedy provision of the workers compensation statute. Defendant alternatively argues that Plaintiff has not submitted evidence of a serious mental injury. Plaintiff contends that the statute contains an exception for "psychological or psychiatric response[s] due to loss of employment or employment opportunities." (Doc. No. 40 at 18). Plaintiff does not respond to Defendant's assertion that she has failed to present serious mental injury.

Without deciding on the applicability of the Tennessee's workers compensation statute, the Court finds that Plaintiff has plainly failed to meet her burden as she has not pointed to any proof in the record save her own feelings of shock and humiliation. Because Plaintiff has failed to meet her burden, summary judgment will be granted on this claim as well.

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

14

Case 3:19-cv-01103   Document 49   Filed 04/18/22   Page 14 of 14 PageID #: 787